UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEITH JONES, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:12CV831 JCH |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, filed on March 22, 2013. (ECF No. 47). The motion is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Keith Jones ("Plaintiff" or "Jones") was employed by Defendant City of St. Louis ("Defendant" or "City") as an electrician in its Facilities Management Division. (Second Amended Complaint ("Complaint"), ECF No. 43, ¶ 4). Plaintiff appears to be employed by the City at present.

Plaintiff alleges that, since at least January 21, 2009, the City "has subjected Plaintiff to harassment because of his race, black." (Id., ¶ 9). In support of this allegation, Plaintiff asserts that he was charged with 1) falsifying a daily time record regarding a call on December 23, 2008, 2) not responding to the call, and 3) receiving overtime for work not performed, and that the City sought to terminate him for these infractions. (Id., ¶ 9(A)). A hearing was held on January 28, 2009, before the Board of Public Service, and it was determined that the charge was unfounded. (Id., ¶ 9(B)). Plaintiff alleges the City treated him "in a disparate manner unequal and unlike white individuals similarly situated who are on call for emergencies affecting electrical equipment and building

systems in City owned buildings," as such individuals "are not subjected to the same level of scrutiny and review regarding their response to emergency calls." (Id., ¶ 9(C)).

Plaintiff took a leave of absence from work due to the "significant mental and emotional distress" caused by the efforts to discharge him and by a written reprimand Plaintiff's manager subsequently presented to him. (Id., ¶ 9(F)).

On Plaintiff's annual performance evaluation for the period ending June 6, 2009, Plaintiff received unsuccessful ratings as to the factors of judgment, quality, work habits, and safety, and Plaintiff received an unsuccessful rating as to his overall performance. (Id., ¶ 10). As a result of this rating, Plaintiff was placed on a Mandatory Improvement Plan for thirteen weeks, and his salary was reduced by ten percent during this thirteen-week period. (Id.). Plaintiff did not receive any feedback, warnings, or counseling that his performance was unsatisfactory prior to receiving these ratings. (Id., ¶ 11(A)). Plaintiff asserts that, by giving him unsuccessful ratings, the City treated him differently than other white individuals in retaliation for his complaints about discriminatory treatment. (Id., ¶ 11). Plaintiff appealed his ratings to the City's Department of Personnel, which overturned the rating for work habits from unsuccessful to successful but sustained the other ratings. (Id., ¶ 12). Plaintiff appealed the ratings to the City's Civil Service Commission, and the outcome of that appeal is unclear. (Id.).

Plaintiff's supervisor refused to accept the written release from Plaintiff's health care provider clearing Plaintiff to work without restrictions when Plaintiff sought to return to work on July 13, 2009. (Id., ¶ 9(F)). Plaintiff asserts the City had "accepted physician's statements provided by white individuals employed as electricians." (Id.). Plaintiff did return to work at some point, although it is unclear when that occurred.

On July 27, 2010, Plaintiff was overcome by exposure to summer heat and passed out while operating a City-owned vehicle. (Id., ¶ 13). This led to a minor accident with minor damage to the vehicle. (Id.). The City reassigned Plaintiff to duties in the warehouse and ordered Plaintiff to submit to two fit-for-duty medical examinations. (Id., ¶¶ 15-17). The City also rejected a statement from Plaintiff's physician that certified that it was safe for Plaintiff to operate a motor vehicle and work as an electrician on February 15, 2011. (Id., ¶ 17). Plaintiff remained assigned to the warehouse until shortly after the decision of the City's Civil Service Commission on January 19, 2012, overturning the orders for Plaintiff to submit to fit-for-duty examinations. (Id., ¶ 19). During the period that Plaintiff was assigned to the warehouse, Plaintiff suffered a loss of earnings and other overtime pay as a result from his removal from emergency call duty. (Id., ¶ 20). Plaintiff asserts that white individuals employed in the City's Facilities Management Division were not required to submit to fit-for-duty examinations after having vehicular accidents in City-owned vehicles or if they were unable to perform the essential functions of an electrician. (Id., ¶ 18(A)-(B)).

Plaintiff filed this action in this Court on May 9, 2012, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1981. On October 30, 2012, the Court dismissed Plaintiff's initial complaint insofar as Plaintiff sought 1) to hold certain of Plaintiff's supervisors liable under Title VII and the ADA in their individual capacities; 2) an award of punitive damages; and 3) to hold the City liable under 42 U.S.C. § 1981. (See ECF No. 16.)

Plaintiff was granted leave to amend and filed a First Amended Complaint asserting violations of Title VII, the ADA, and 42 U.S.C. § 1983. The City moved to dismiss Plaintiff's First Amended Complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, and the Court dismissed Plaintiff's First Amended Complaint but granted Plaintiff leave to amend.

Plaintiff's Second Amended Complaint asserts violations of Title VII and 42 U.S.C. § 1983. The City has again moved to dismiss the operative Complaint for failure to state a claim under Rules 8(a)(2), 41(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

**STANDARD**

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to the plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

**DISCUSSION**

The City again seeks, pursuant to Rules 8(a)(2), 41(b), and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Title VII and 42 U.S.C. § 1983 claims for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that

allegations in a complaint "be simple, concise, and direct." As discussed in more detail below, the Court finds Plaintiff has not corrected the deficiencies noted in this Court's previous Order dismissing Plaintiff's First Amended Complaint. (See ECF No. 36). Therefore, the Court will dismiss Plaintiff's Second Amended Complaint with prejudice. See Mangan v. Weinberg, 848 F.2d 909, 911 (8th Cir. 1988) ("A complaint which fails to comply with Rule 8 may be dismissed with prejudice pursuant to Fed.R.Civ.P. 41(b) after allowing time to file an amended complaint.").

**I.    Title VII Claims**

Title VII makes it "an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has recognized that "the phrase 'terms, conditions, or privileges of employment' in [Title VII] is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination." Vance v. Ball State Univ., __ S.Ct. __, 2013 WL 3155228, at *4 (U.S. June 24, 2013) (quoting Rogers v. EEOC, 454 F.2d 234 (5th Cir. 1971)). Title VII also prohibits an employer from discriminating against any individual for opposing "any practice made an unlawful employment practice by this subchapter." Id. § 2000e–3(a). Plaintiff appears to assert claims under Title VII for harassment based on discrimination, hostile work environment, and retaliation.

To establish a racial discrimination claim under Title VII, a plaintiff must show that 1) he is a member of a protected class, 2) he met his employer's legitimate expectations, 3) he suffered an adverse employment action, and 4) the circumstances give rise to an inference of unlawful discrimination. See Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005). The required prima facie showing for discrimination is a "flexible evidentiary standard," and a plaintiff

can satisfy the fourth element of the prima face case in a variety of ways, such as by showing more-favorable treatment of similarly situated employees who are not in the protected class, or biased comments by a decision maker. Lewis v. Heartland Inns of Am., L.L.C., 591 F.3d 1033, 1039 (8th Cir. 2010) (quoting Swierkiewicz v. Soreman N.A., 534 U.S. 506, 512 (2002)).

A harassment claim based on a racially hostile work environment under Title VII consists of the following elements: 1) membership in a protected group, 2) unwelcome harassment, 3) a causal nexus between the harassment and membership in the protected group, and 4) the harassment affected a term, condition, or privilege of employment. Pye v. Nu Aire, Inc., 641 F.3d 1011, 1018 (8th Cir. 2011).

To prove a retaliation claim under Title VII, a plaintiff must show that the desire to retaliate was the but-for cause of the challenged employment action. Univ. of Texas Sw. Med. Ctr. v. Nassar, __ S.Ct. __, 2013 WL 3155234, at * 10 (U.S. June 24, 2013).

Plaintiff's Second Amended Complaint does not correct the deficiencies in his Title VII claims that the Court previously found in Plaintiff's First Amended Complaint. Plaintiff presents no factual allegations to suggest an inference of unlawful discrimination, a causal nexus between the alleged harassment and Plaintiff's race, or that the desire to retaliate was the but-for cause of any of the adverse employment actions that Plaintiff complains of. Plaintiff's conclusory assertions that he was treated differently than similarly situated white employees are insufficient to survive a motion to dismiss. See Iqbal, 129 S. Ct. at 1949. Thus, Plaintiff's Title VII claims will be dismissed with prejudice.

## II. Section 1983 Claims

Plaintiff also asserts that the City is liable under 42 U.S.C. § 1983—substantially based upon his Title VII allegations—for violations of Plaintiff's constitutional rights under the Fourteenth Amendment.

As the Court noted in its previous Order, the Supreme Court has held as follows:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978). A "municipal policy" is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 197, 1204 (8th Cir. 1999). Alternatively, a "municipal custom" may be demonstrated by 1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) that the plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation. See id.

Again, Plaintiff's Second Amended Complaint does not correct the deficiencies in his § 1983 claims that the Court previously found in Plaintiff's First Amended Complaint. The allegations found in Plaintiff's Complaint speak to isolated actions by individual actors. None of the allegations point to a policy or custom that injured Plaintiff. As a result, Plaintiff's § 1983 claims will be dismissed with prejudice.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 47) is **GRANTED**. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 11th day of July, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE