# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| KEITH JONES, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 4:12CV831 JCH |
| CITY OF ST. LOUIS, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant City of St. Louis, Missouri's (the "City") Motion for Summary Judgment. (ECF No. 85). The Motion has been fully briefed and is ready for disposition.

"Plaintiff [Keith Jones] is currently and has been an Electrician employed by the City in the Facilities Management Division of the Board of Public Services ("BPS") at all relevant times . . . ." (City Statement of Facts, "CSF," ECF No. 85-2, ¶ 1). On July 27, 2009, Jones filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), "claiming that he was charged with stealing time, written up and threatened with discharge, that his disability status was brought up at the hearing, and that he was written up on February 23, 2009 due to job performance." *Id.* ¶ 11. These actions, Jones claimed in the Charge, were taken due to his race and disability. (First Charge, ECF No. 85-11). "[Jones] filed an amended charge of discrimination on March 5, 2010 ("2010 Charge") alleging race and disability discrimination, claiming that that [*sic*] he received a low evaluation, his pay was reduced, and his doctor's note was not accepted . . . ." (CFS ¶ 13).

1

Jones initiated this action by filing a complaint on May 9, 2012. (ECF No. 1). That complaint was dismissed without prejudice, and Jones was given leave to file an amended complaint. (First Dismissal, ECF No. 16). Jones then filed his First Amended Complaint. (ECF No. 18). Jones's First Amended Complaint was also dismissed, and he was given leave to file a second amended complaint, which he did. (Second Dismissal, ECF No. 36; 2d Amd. Cmplt., ECF No. 43).

Jones's Second Amended Complaint contained claims for harassment, racial discrimination, and unlawful retaliation. *Id.* These claims were brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. *Id.* The Court ultimately dismissed all claims contained in the Second Amended Complaint, this time without leave to amend. (Third Dismissal, ECF No. 63). Jones appealed that order. (ECF No. 65). The Eighth Circuit affirmed the dismissal of Jones's § 1983 claims and harassment claims. (Appellate Opinion, ECF No. 69, at 3). It also reversed the dismissal of Jones's Title VII racial discrimination and retaliation claims. *Id.* at 4.

After the Eighth Circuit issued its reversal, Jones filed a third amended complaint (the "Complaint") with leave of the Court. (3d Amd. Cmplt., ECF No. 79). The Complaint contains three counts, each of which contains various distinct claims of racial discrimination under Title VII.[1] The City seeks summary judgment in its favor on all counts.

---

[1] Jones also included retaliation claims in two of the counts in his Complaint. (3d Amd. Cmplt. ¶¶ 13, 20). The City contends in its summary judgment motion that these claims should be dismissed because they were not raised in either EEOC charge. (City Support Memo, ECF No. 85-1, at 3). Jones agrees. (Jones Response, ECF No. 97, at 4 ("Plaintiff did not in his charges of discrimination allege retaliation.")). The Court will therefore treat the retaliation claims as abandoned and discuss only the claims of racial discrimination.

## SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Relevant substantive law determines "which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.*

## DISCUSSION

Jones provides only indirect evidence for each claim of racial discrimination. The Court therefore employs for its analysis the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which involves three steps. First, Jones must establish a prima facie case of race discrimination by demonstrating that "(1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently." *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005). If Jones makes a prima facie case, the onus is placed on the City "to establish a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action." *Humphries v. Pulakski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692-92 (8th Cir. 2009) (quoting *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004)). If the City is able to do so, the burden shifts back to Jones to demonstrate that the City's reasoning is merely pretextual and that he was, in fact, "the victim of intentional discrimination." *Dixon v. Pulaski Cnty. Sch. Dist.*, 578 F.3d 862, 868 (8th Cir. 2009) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

A. *Count I*

The three counts in Jones's Complaint involve distinct discriminatory actions, each with its own set of relevant facts. The facts material to Count I are not disputed. "On December 24, 2008, the City Fire Department's Engine House #30 lost power from 1630 (4:30 p.m.) to 1730 (5:30 p.m.)[,]" and Jones responded to the problem. (CSF ¶¶ 19, 20). Paperwork relevant to that call seemed to indicate that Jones had responded to the call on December 23 rather than December 24. *Id.* ¶¶ 20, 23, 24. Based on that discrepancy, Marjorie Melton, the President of BPS, (CSF ¶ 2), initiated an investigation into whether Jones should be terminated. *See id.* ¶¶ 27, 28. Melton ultimately decided "that termination was not warranted because there was not enough evidence that [Jones] deliberately falsified records or failed to respond to the call-back." *Id.* ¶ 28. Melton did, however, authorize "a written reprimand." *Id.* ¶ 29.

Jones contends in Count I that these actions constituted racial discrimination under Title VII. Specifically, he alleges that the following amounted to discriminatory actions: (1) that Melton sought to discharge Jones; (2) that, through Jones's supervisor Richard Sellars, she issued him a written reprimand; (3) that Sellars "threatened to discipline" Jones for failing to sign the written reprimand; (4) that the mental anguish from this episode caused Jones to take approximately four months of leave; and (5) that, upon returning to work, Sellars refused to accept a written release from Jones's health care provider that Jones was ready to return to work. (3d Amd. Cmplt. ¶¶ 9-11).

The City contends, in part, that Jones has failed to make out a prima facie case of discrimination in Count I because there is no evidence that Jones suffered an adverse employment action. (City Support Memo, ECF No. 85-1, at 8-9). Jones responds that the written reprimand and threatened termination amounted to an adverse employment action because those

actions "so traumatized Jones that he went on sick leave . . . ." (Jones Response, ECF No. 97, at 5). This resulted in a reduction in his accrued sick leave and, since City employees are paid upon retirement for unused sick leave, a reduction in the pay Jones would have received upon retiring. *Id.*

Jones's contention must fail because it is contrary to Eighth Circuit precedent. "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Serv.*, 728 F.3d 800, 804 (8th Cir. 2013). This definition does not include "minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage . . . ." *Id.* The *Jackman* plaintiff argued "that the depletion of her sick leave constitute[d] an adverse employment action." *Id.* at 805. Applying the general definition set out above, the Eighth Circuit disagreed, finding that use by the plaintiff of "favorable employment benefits" does not amount to an adverse employment action under Title VII.

*Jackman* precludes a finding that Jones's use of paid sick leave constitutes adverse employment action by the City. The City provided Jones a favorable employment benefit, and Jones took advantage of it. This does not in any way amount to a cut in benefits, even if it means Jones will not receive money for unused benefits upon retirement. It simply means Jones received the benefit in one way instead of another. Jones's contention therefore must fail.

Jones also contends that he suffered an adverse employment action in relation to the charges in Count I because the City refused to accept a return-to-work statement from Jones's physician when he attempted to return from sick leave. Jones has presented no precedent in

support of this claim, and he has made no attempt to explain how the refusal of a doctor's note itself materially affected any condition of his employment. (*See* Jones Response at 6). Nor has he presented any evidence of harm resulting from the City's refusal of his July 2009 doctor's note.[2] *See id.* Due to the lack of evidence that Jones suffered an adverse employment action in relation to the allegations in Count I, he has failed to make out a prima facie case on that count. The City is therefore entitled to summary judgment on Count I of Jones's Complaint.

B. Count II

Count II involves a disputed series of events which undisputedly resulted in Jones receiving a temporary pay reduction. According to the City, Jones was performing inadequately in several ways for the rating period ending June 6, 2009. (CSF ¶¶ 59-62). The City presented in its statement of facts several specific instances on this inadequate performance. *Id.* ¶¶ 52-57. While Jones disputes the facts underlying these instances, (*see generally* Jones Affidavit, ECF No. 97-2), the City maintains that they collectively resulted in Jones's performance rating of "Unsuccessful." *See id.* ¶¶ 59-62. They also resulted in Jones's placement on a 13-week Mandatory Improvement Plan ("MIP"), *id.* ¶ 63, which in turn resulted in a temporary pay reduction.

The parties' dispute regarding the allegations in Count II has two components. The first is a dispute over whether Jones was performing his job in a satisfactory manner. The second is whether similarly-situated white employees were treated differently for infractions similar to the ones the City contends Jones committed. These two disputes relate to all three steps of the *McDonnell Douglas* framework. The dispute over Jones's job performance relates both the "meeting expectations" element of the prima facie case and to the "legitimate reason" step, since

---

[2] Jones has suggested that the City's refusal to accept a doctor's note after a separate absence in 2010 resulted in a loss of overtime pay. (Jones Response at 6). But he cites only a paragraph of his Complaint in support of this proposition, and it does not in any way relate to the City's 2009 refusal.

6

the reason for discipline proffered by the City is that Jones's job performance was deficient. The dispute over whether Jones has sufficiently demonstrated the City's different treatment of similarly-situated white employees relates both to the fourth prong of the prima facie case and to Jones's contention that the City's proffered explanation is pretext for discrimination.

Jones has met his burden as to the first and third prongs of his prima facie case by presenting evidence that he is black and that he received a temporary pay reduction. As to the third element, Jones has presented evidence that he is a long-time employee of the City; that he received college and professional training as an electrician; and that he has received commendations from the mayor, including one in 2012. (Jones Affidavit ¶¶ 2, 3, 4, 7). This is sufficient under Eighth Circuit Precedent. *See, e.g.*, *Riley v. Lance, Inc.*, 518 F.3d 996, 1001 (8th Cir. 2008) ("Since he had been performing the DAM job successfully for years, he met [the second prong] of the prima facie case."); *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944 (8th Cir. 1994) (finding the second prong satisfied because plaintiff "had held [the job] for several years").

To satisfy the fourth element, that a similarly-situated employee not of the protected class was treated differently, Jones must present evidence that he and the proposed comparators are "similarly situated in all relevant respects." *Meyers v. Ford Motor Co.*, 659 F.2d 91, 94 (8th Cir. 1981). "What is relevant (in determining whether employees are similarly situated) is that two employees are involved in or accused of the same offense and are disciplined in different ways." *Boner v. Bd. of Comm'rs of Little Rock Mun. Water Works*, 674 F.2d 693, 697 (8th Cir. 1982) (internal quotation marks omitted).[3]

---

[3] As several other courts have pointed out, there was at one time two lines of cases in the Eighth Circuit regarding the standard to be applied at the prima facie stage for determining whether other employees are similarly situated. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005). This conflict was settled in *Chappell v. Bilco Co.*, 675 F.3d 1110 (8th Cir. 2012). Following the Eighth Circuit's *en banc* holding

The City accused Jones of five separate failings for the rating period that ended on June 6, 2009. The first alleged failing was the December 24, 2008 Fire Engine House # 30 incident discussed in Count I. (CSF ¶ 59). The second was that Jones "received a call from the emergency customer service line reporting loss of heat at Engine House 26 while on call at approximately 10:45 pm. [*sic*] on December 21, 2008." *Id.* ¶ 52. The City claims Jones called the on-call HVAC mechanic in relation to that emergency call but did not speak with the HVAC mechanic until "approximately 3:30 a.m. on December 22, 2008." *Id.* Jones's third alleged failing was that he "received an assignment to shut down power to the elevators at the Gateway Transportation Center building" and wound up shutting off power to the entire building instead of just the elevators. *Id.* ¶ 53. Fourth, "[o]n December 24, 2008 [Jones] did not test the Fire Department's generator at 7:00 a.m. as required by an agreement between Facilities Management and the Fire Department." *Id.* ¶ 54. Finally, the City claims Jones "failed to properly wire a compressor at the Municipal Garage, causing it not to function in 2009." *Id.* ¶ 57. It was these alleged failures that served as the basis for Jones's "unsuccessful" performance ratings in several categories and ultimately led to his placement on the MIP. *Id.* ¶¶ 59-63.

Jones suggests that the failings of two white employees compare favorably with the City's accusations against him and that the City's failure to discipline those employees means he has satisfied the fourth element of his prima facie case. Jones alleges that the first employee, Randy Luber, was an HVAC mechanic who "repeatedly failed to respond to calls while serving on-call duty" but was not disciplined. (Jones Response at 9). The second, Anto Kresic, "failed, after weeks, to troubleshoot and correct a problem with outdoor lighting at the Gateway

---

in *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (*en banc*) that the earliest panel opinion controls in case of conflict, the *Chappell* court applied the Eighth Circuit's first articulation of the prima facie "similarly situated" standard, which was the articulation in *Meyers*. *Chappell*, 675 F.3d at 1118. This is the standard used here.

Transportation Center." *Id.* at 11. Jones points to no other details that would be relevant at this stage of the analysis.

Based on the evidence Jones has put forth, neither Kresic nor Luber is an adequate comparator for purposes of establishing a prima facie case of discrimination. The failure of which Jones accuses Kresic is facially dissimilar from Jones's failures, and Jones makes no attempt to show similarity between the two. He also does not attempt to reconcile the fact that Jones was accused of five different types of failures, in contrast with the single failure of which he accuses Kresic. The comparison with Luber is stronger in that both are accused of not responding to calls during on-call duty. But, again, Jones was accused of four other, wholly different failures in addition to that. As with the Kresic comparison, Jones makes no attempt to show why Luber's alleged failure in one area, even if it was a repeated failure, is similar to Jones's alleged failures in five. Given these differences, it cannot be inferred that the disciplinary actions taken against Jones occurred because of racial discrimination. Without such a showing, Jones cannot make his prima facie case, and the City is entitled to summary judgment on Count II.

Even if the evidence Jones presents could be said to establish a prima facie case of discrimination, summary judgment would still be appropriate. The City has presented an adequate non-discriminatory reason, his alleged failure in multiple performance areas, for placing Jones on the MIP. Jones therefore would have the burden to show the existence of a material factual issue as to pretext were use of the whole *McDonnell Douglas* framework necessary. This Jones cannot do.

The evidence Jones has presented—again, assuming that it sufficiently makes out a prima facie case—cannot be said to establish the type of "strong" prima facie case that, coupled only

with an adequate attack on the veracity of his employer's proffered reason for discipline, creates a material fact issue as to pretext. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 ("Proof of pretext, coupled with a strong prima facie case, may suffice to create a triable question of fact."); *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 989 (8th Cir. 2011) ("We have made it clear that 'evidence discrediting an employer's nondiscriminatory explanation is not necessarily sufficient' to resist a summary judgment in an employment discrimination case." (quoting *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336 (8th Cir. 1996))). Instead, Jones would need to present some evidence that the City's explanation was pretext for discrimination, not merely that it was false. *Tyler*, 628 F.3d at 989.

The only evidence of discrimination Jones presents is that the purportedly similarly-situated employees discussed above were treated differently. "At the pretext stage, 'the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.'" *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012) (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005)). For the comparison to be successful, "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).

Jones's evidence is wholly insufficient to satisfy this rigorous test. As discussed above, the conduct of which he was accused was not similar in nature or degree to the conduct of which he accuses Kresic and Luber. Moreover, Jones has presented no evidence that he shared a supervisor with Kresic or Luber. The record is devoid of information regarding Kresic's supervisor. As to Luber, Jones asserts that even though they did not share a direct supervisor, they both "report to a foreman who reports directly to Roger Sellars." (Jones Response at 9). The

Eighth Circuit rejected an almost identical argument in *Bone*, *id.* at 956, and Jones makes no attempt here to distinguish that finding. Thus, even if analysis of Jones's claims at the pretext stage were necessary, Jones has not presented sufficient evidence to create a triable factual issue, and summary judgment would still be appropriate.[4]

C. Count III

Count III centers primarily on a July 27, 2010 car accident Jones was involved in and the results of it. "During the afternoon of July 27, 2010, [Jones] passed out while driving a City-owned vehicle and had an accident." (CSF ¶ 84). Jones's physician determined that this accident was caused by a hypoglycemic episode. *Id.* ¶ 85. It was subsequently recommended that Jones undergo a "fitness for duty" examination. *Id.* ¶ 88. Jones did so, and the doctor who conducted the examination, "recommended that [Jones] not be allowed to drive a commercial vehicle, operate a bucket truck, or work alone." *Id.* ¶ 91. Jones was then assigned "to the warehouse where he would not be required to drive for extended distances and periods of time or work alone on a regular basis." *Id.* ¶ 93. After his reassignment, Jones presented two letters to the City indicating that Jones "could drive and work . . . ." *Id.* ¶ 94. Since these letters "seemed to be in conflict" with the earlier fitness-for-duty exam, it was determined that Jones should undergo a second fitness-for-duty exam. *Id.* ¶¶ 95-96. Ultimately, however, "the City's Civil Service Commission determined the appointing authority did not have the authority to order [Jones] to attend the examination." *Id.* ¶ 97.

---

[4] It is also not clear that Jones has presented the type of evidence necessary to show that the City's explanation was false. To make such a showing, an employee must present evidence "that the employer's proffered explanation is unworthy of credence because it has no basis in fact." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006) (internal citation and quotation marks omitted). Jones's rebuttals of the City's facts generally involve an admission that a particular event occurred, followed by an elaboration of or alternative explanation for that event. (*See, e.g.*, Jones Aff. ¶¶ 19, 21, 28). It would therefore be difficult to conclude that Jones has shown the City's proffered rationale to have no factual basis.

The City contends it is not necessary to analyze Count III under the *McDonnell Douglas* framework because Jones failed to exhaust his administrative remedies with regard to the discrimination claims in that count. (City Support Memo at 3-4). This is so, according to the City, because Jones did not mention either the fitness-for-duty examination, which was preceded by a rejection of Jones's physician note, or the warehouse reassignment either in his original EEOC Charge of Discrimination or in his Amended Charge. *Id.* at 4. Jones responds that, while he did not expressly mention these actions, he did mention in his Amended Charge the City's refusal to accept a note from Jones's health care provider that Jones was ready to return to work after the extended sick leave discussed in Count I. (Jones Response at 3-4). "Thus, Jones alleges in Count III a second instance of the same kind of discrimination—rejection of a physician's statement—as he alleges in the amended charge . . . ." *Id.* at 4. The actions in Count III could therefore be said to have grown out of the earlier actions, and Jones did not fail to exhaust his administrative remedies. *Id.*

Timely filing of a charge of discrimination with the EEOC "is a prerequisite to the later commencement of a civil action in federal court similar in nature to a statute of limitations." *Cobb v. Stringer*, 850 F.2d 356, 358 (8th Cir. 1988). The scope of the civil action need not be "confined to the specific allegations in the charge . . . ." *E.E.O.C. v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir. 1992). Instead, the complaint in the civil action may include allegations, including of discriminatory acts that occurred after the filing of the original charge, that "are like or reasonably related to the administrative charges that were timely brought." *Wedow v. Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006) (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986)).

The application of this standard has been narrower than the language might indicate. While subsequently-occurring discriminatory actions not expressly included in a charge of discrimination can be part of a civil complaint when they are similar in nature to a type of ongoing discrimination, wholly distinct acts of discrimination must be raised in a separate EEOC charge. *See id.* at 672-75. For instance, when an EEOC charge complains "of a single incident that occurred on a specific day[,]" *id.* at 675 (citing *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005)), or "of acts within a specific limited time period[,]" *id.* (citing *Shelton v. Boeing Co.*, 399 F.3d 909, 912-13 (8th Cir. 2005)), a subsequently-occurring discrete action cannot be said to fit within the scope of the original charge such that the plaintiff's administrative remedies have been exhausted in relation to that action.

Jones's Amended Charge states the following:

> I am employed with [the City] as an Electrician. On 08/03/09 I received my Employee Service Rating for the period ending 06/06/09. I also received a thirteen (13) week mandatory improvement plan and my salary was reduced by 10%. Additionally, although requested, I was not provided current standards of performance. I had been returned to work on 07/13/09. When I presented my return to work letter, I was informed that the statement was insufficient because the doctor did not state whether or not I had restrictions. On 07/14/09 I was allowed to work my shift after presenting a revised doctor's statement. At the end of the day I was told that I was not allowed to return to work until I got a release from my doctor who was treating my disability. I believe that I received a low evaluation. My pay was reduced and my doctor's note was not accepted due to my race, African American and due to my disabilities/perceived disabled.

(Amended Charge, ECF No. 85-12). In short, Jones alleged that specific discriminatory actions occurred on specific dates and makes no allegation that such actions were ongoing.

Jones's attempt to connect those allegations with the allegations made in Count III of his Complaint therefore must fail. Jones is correct that both incidents involve the rejection of a physician's note. But that is where the similarity ends. The alleged events in Count III transpired

more than a year after the events alleged in the Amended Charge. They also relate to an entirely different series of occurrences. Jones makes allegations in the Amended Charge about the City's refusal to accept a doctor's note after he took sick leave in relation to the alleged attempt to fire him described in Count I. In Count III, the City's refusal of Jones's doctor's note followed an accident Jones caused after he passed out while driving. If there is any connection between these claims of discrimination, it is too attenuated to conclude that Jones exhausted his administrative remedies with regard to the allegations in Count III despite the fact that he did not file a new EEOC charge containing those allegations. Summary judgment must therefore be granted in the City's favor on this count.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis, Missouri's Motion for Summary Judgment, (ECF No. 85), is **GRANTED**, and Plaintiff Keith Jones's Third Amended Complaint, (ECF No. 79), is **DISMISSED WITH PREJUDICE**. A separate Judgment will accompany this Memorandum and Order.

Dated this 11th Day of May, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE